FLAVIA M. T. PENDILL ET AL. v. DAN P. EELLS ET AL.

*Landlord and tenant—Mortgage of leasehold interest—Eviction —Rent.*

Where after the mortgagees of a lessee of a mine took possession of the leasehold interest, and placed a custodian in charge, after which the lessor entered and took and retained sufficient possession to prevent the mortgagees from working the leased property, by locking up the buildings and leaving a man in charge to retain such possession, such acts amounted in law to a substantial eviction of the mortgagees, and relieved them from any liability for the payment of rent.

Error to Marquette. (Grant, J.) Argued November 1 and 2, 1887. Decided January 5, 1888.

Assumpsit for rent. Defendants bring error. Reversed. The facts are stated in the opinion.

*Ball & Hanscom*, for appellants.

*F. O. Clark*, for plaintiffs.

MORSE, J. The plaintiffs, as heirs of James P. Pendill, deceased, bring this suit against the defendants for rents or royalties under a mining lease.

One of the heirs did not join in the suit. On the third of August, 1885, she disposed of her interest to one of the plaintiffs, but the deed made by her did not carry with it the

right to sue for and recover past rents. Therefore, although the suit was brought to recover rent from the sixteenth day of ·May, 1884, to the sixteenth day of September, 1885, in the present suit the rent from August 3, 1885, could only be considered.

The ground of plaintiffs' claim is that on the first day of January, 1877, James P. Pendill leased the premises described in the declaration to the McComber Iron Company for the term of 23 years. The royalty to be paid under this lease was 50 cents for every gross ton of 2,240 pounds of iron ore mined from the premises, and to amount to not less than $3,000 for each year.

A report was to be made to Pendill upon the fifth day of every month of the full amount of ore mined, at which time payment for said ore so reported was to be made by the McComber Iron Company.

On the sixteenth day of May, 1884, the McComber Iron Company executed a mortgage to the defendants in this suit. This mortgage covered all the personal property and fixtures upon the premises, and also the leasehold interest. The clause in the mortgage referring to the lease reads as follows:

" The grantor has given, granted, bargained, sold, assigned, transferred, and set over, and by these presents does give, grant, bargain, sell, assign, and set over, to them, the said grantees, their heirs, executors, and administrators and assigns forever, the following goods, chattels, and property, now being in its possession, to wit:

" 1. Its leasehold right, title, and interest in and to certain premises in the city of Negaunee, county of Marquette, and State of Michigan, to wit [the land described in the lease from Pendill to the McComber Iron Company], and all tracks, side-tracks, rights, and privileges pertaining to said land and now thereon; said leasehold interest and rights being derived from a lease from James P. Pendill and wife to said grantor, dated January 1, 1877, and recorded in the office of the register of deeds of Marquette county, February 14, 1877, at 10 o'clock A. M. in Book ·2 of Miscellaneous Records, pages 396, 397, 398."

It is claimed by the plaintiffs that the defendants, by virtue of this mortgage, and under it, took possession for the purposes of foreclosure, not only of the personal property and fixtures, but of the premises under the leasehold right assigned to them by said mortgage.

There was evidence tending to show that in December, 1884, William S. Dalliba, by the direction of James J. Tracy and Dan P. Eells, two of the mortgagees and defendants, went to this mine for the purpose of taking possession of the mortgaged property. It is conceded that he placed one Michael Ryan in charge of the personal property and fixtures, with instructions not to permit any person to remove the same. The plaintiffs claim that he also took possession of the premises under the assignment of the lease in the mortgage, and thereby the defendants became liable for the rent. There was no mining done after Dalliba placed Ryan in charge of the property.

In September, 1885, Ryan was dispossessed by the plaintiffs under a judgment of restitution against him.

The jury rendered a verdict in favor of the plaintiffs for the sum of $377.58, being the amount of the rent from August 3 to September 13, 1885, and the interest thereon.

In the assignments of error on the part of the defendants in this Court, the main objections lie to the action of the circuit judge in instructing the jury.

It is claimed, and there was evidence tending to show, that in January, 1885, James P. Pendill, the lessor, with one Henry M. Atkinson, who accompanied Pendill at his request, went upon this mining property for the purpose of taking possession, making re-entry, and forfeiting the lease for the non-payment of the rent or royalty. Pendill notified Ryan, who was holding possession for the mortgagees, and defendants in this suit, that he came to take possession, and demanded the property. Ryan said he intended to hold the property until he heard from his parties, and refused to

accede to Pendill's demand.   Pendill placed locks of his own
upon the engine-house and other buildings, and gave the
keys to Atkinson, putting him in charge of the property.
Ryan made no resistance to this procedure.   Atkinson kept
the keys, retaining thereby what possession had been acquired
by the acts of Pendill.   Atkinson visited the property fre-
quently, and finally employed a son of Ryan to look after the
property for him.

The personal property was advertised for sale for taxes in
February, 1885, and Pendill and Atkinson went with the
tax collector, opened the buildings for him, and bid in some
of the property at the sale.   There were also negotiations
between Pendill and Atkinson looking towards a leasing of
the mine to Atkinson, but before the same was completed,
and in March, 1885, James P. Pendill died.

After the death of James P. Pendill, Atkinson delivered
the keys of the buildings over to James Pendill, one of the
plaintiffs, at his request, who, acting as agent for the estate
of his father, thereafter looked after the property, and
demanded of Ryan rent of the house he was living in on the
premises.

It is contended by the counsel for the defendants that the
nature of these acts on the part of James P. Pendill and
his son, as agents for the heirs, was such as to be in fact a
virtual eviction and dispossession of the defendants, and that
after such eviction from the engine-house and working por-
tion of the mine no rent could be recovered under the lease.

The court below was requested to instruct the jury, among
other things, that if they found from the evidence that the
lessor, James P. Pendill, took possession of the engine-house,
or caused the same to be locked up, and the defendants to
be excluded from the full opportunity to use and enjoy the
same, then, in such case, the plaintiffs could not recover.

This the court refused, and charged the jury that if the
defendants or any any of them took possession of the prop-

erty under the chattel mortgage and the conditional assignment of the lease, and retained possession during the time covered by the declaration, from the third of August to the thirteenth of September, 1885, they became obligated to pay the rent, provided that the lease was not forfeited on the part of Mr. Pendill, and further provided that he had not interfered with their quiet and peaceable enjoyment of the property; that is, provided he had not taken such steps as would prevent the occupation and enjoyment of the property contemplated in this lease.

"I charge you that a mere attempt on the part of James P. Pendill to obtain possession of the property, and a failure to obtain possession, would not prevent the rights of these plaintiffs to recover. The acts of Mr. Pendill must have been such as to have prevented these parties from enjoying the use of the property. So that, if you find from the evidence in this case that Mr. Pendill went up there, and placed a lock on one of those buildings where the machinery was, and that was all the act of possession he did, and that Mr. Ryan was in possession under these mortgagees, under their directions, with instructions to hold the possession of the property, and that he did hold possession, and that he disregarded the act of Mr. Pendill, and placed another lock on there himself in behalf of the mortgagees,—that act of Mr. Pendill's would not be such as would oust the defendants from the use of the property, or prevent the plaintiffs' right to recover."

The counsel for defendants claim that this instruction of the court did not fully meet the case as made; that they were entitled to the request as specifically made by them, that the locking of the engine-house in itself, and keeping a man to see that it was not broken open, effectually excluded the defendants from using the mine and obtaining the benefits of the lease.

The evidence in the record is undisputed that when Pendill and Atkinson went upon the premises they tore off the locks placed there by Dilliba, and put new locks of their own upon the buildings. In February these locks were still upon

the buildings, and they were opened by Pendill and Atkinson for the tax collector. Ryan did not take off these locks, but put on new locks of his own over those placed there by Pendill and Atkinson. No attempt was ever made by the defendants, or by any one acting for them, to work the mine.

The locking up of the buildings and the watching of the personal property by both parties resulted in a compromise on the twenty-eighth of July, 1886, by which the defendants were permitted to take away the engines, boilers, and other machinery, and the tools, mining implements, and supplies, and left to the plaintiffs the trestles, timber work, tramways, and buildings, and all the dump piles of mixed ore.

We think the request of the defendants should have been given. The possession taken by Pendill was sufficient as long as it lasted to exclude the defendants from working the mine. There is no evidence that such possession was ever interfered with, so that the mine could be used. It is true, Ryan put locks over those of Pendill, but this was evidently done not to regain possession of the mine, but to keep the personal property subject to the mortgage and safe from any danger of removal.

When James Pendill, one of the present plaintiffs, filed his bill in chancery to enjoin the defendants from removing the personal property and fixtures, which was of the date of the twelfth day of September, 1885, he alleged in said bill under oath that his father, James P. Pendill, entered and took possession of the leased premises about January 30, 1885, on account of the failure of the McComber Iron Company to pay royalty and taxes, and their abandonment of the premises about June 1, 1884; that his father held possession of said premises and the machinery from January, 1885, until his death, and from the date of his decease the son, James, had retained and kept such possession. In fact, the undisputed evidence upon both sides shows such acts of possession and control on the part of the deceased, Pendill, and his heirs, as

to amount in law to a substantial eviction of the defendants from the leasehold, if they ever meant to take possession or make any use of it.

The testimony would have warranted the circuit judge in instructing the jury to find a verdict for the defendants, on the ground that the possession of the mine was substantially in Pendill and his heirs, and not in the defendants, from the date of the entry by Pendill and Atkinson, and the locking up of the buildings by them.

As it is not likely that the facts upon another trial will materially differ from those contained in this record we do not consider it necessary to consider the other points raised by defendants' counsel.

The judgment of the court below will be reversed, and a new trial ordered, with costs of this Court to defendants.

SHERWOOD and CHAMPLIN, JJ., concurred.

CAMPBELL, C. J., did not sit.